25-1092, American Whitewater Petitioner v. Federal Penalty Regulatory Commission. Ms. Nicholson for the Petitioner, Ms. Schanger for the Respondent. Good morning, Ms. Nicholson. Start when you're ready. Good morning and may it please the Court. My name is Haley Nicholson and I represent Petitioner American Whitewater. American Whitewater followed the requirements in Rule 214 to file for late intervention and FERC surrender proceedings for the Niagua Hydroelectric Project in Missouri. At first, there was nothing but green flags in response to American Whitewater's motion. It was an early stage of the proceedings before any final orders had been issued, no party opposed American Whitewater's intervention, and two months after American Whitewater's motion, FERC issued the Environmental Assessment, or EA, to propose surrender, which listed American Whitewater in a table as an intervener alongside the other parties who had already intervened in the proceedings. American Whitewater then filed timely comments on the EA advocating for surrender with dam removal. It was only then that those initially green flags suddenly became red. Just two weeks after these comments were filed, FERC denied American Whitewater's motion. Is this case moot because the commission issued its order approving the license of surrender without taking down the dam in December? And so, I'm unclear as to what relief this court could give you at this point, even if you were able to intervene. This case is not moot, Your Honor, for several reasons. The first is this court's decision in Public Service Commission of State of New York versus Federal Power Commission, where, in that case, they were dealing with the denial of intervention from the Federal Power Commission proceedings. And they held that once a petition for review of that denial was properly filed, quote, it cannot be mooted by any action of the Federal Commission. You couldn't properly file it. I know you filed a probably protective petition for review, but you have to be a party to the proceeding to file a petition for review. Is your theory that if you went here and then we remand, just for FERC to apply its test again, we can't dictate that they let you intervene? That's not the type of error you've identified. And if they then would decide to let you intervene, that would somehow ratify a petition that was filed when you were not a party? In this case, Your Honor, the Federal Power Act is Section 16 U.S.C. 825 L.B. that allows for FERC to modify its rehearing request orders. So, in this case, even after the petition for review was filed in that related case on the surrender order, FERC still has the ability to modify its findings if it does find on remand that American Whitewater is properly a party to these proceedings. FERC has no indication that it has any interest in modifying its decision. I mean, instead, we consider your environmental assessment comments, even without intervention, and you haven't come here saying that they didn't. And so, I'm still unclear as to, I mean, it seems rather speculative, but they would both have, we have to speculate both that they would grant you intervention and that then they would, a year after the fact, decide to modify. But even if they modify it, you would only get to seek review of the modified decision, not the original decision to surrender the license. That's correct, Your Honor. And in this case, we're dealing with a procedural injury. So, redressability looks a little bit different. It's the mere possibility that the order could be changed on remand that matters. It's, well, I'm not sure that that works here when, you know, processes are going forward. And, I mean, we would have to both remand your intervention decision and direct them to reopen their underlying proceeding, right? Normally, those procedural injuries come up at the same time. There's a challenge to the merits in the same case. And so then we can also send the merits back and say, let us know if anything changes. But we don't have a petition here. Nobody has petitioned for review. No party has petitioned for review of the decision to surrender the license. Beyond American Whitewater, Your Honor. You're not, I said no party. You're not a party. And even if you become a party later, that would be way after the time for filing a petition for review from the surrender decision. Your theory is that it recessed the clock? No, Your Honor. It's the 16 U.S.C.A. 25 LB that will allow FERC to modify its decision on American Whitewater's hearing request, which included merits discussions. It wasn't about intervention. So, FERC could modify its discussion even after the petition for review was filed, and the court would still have jurisdiction to hear it. And that case that I cited, the Public Service Commission, they were dealing with a remarkably similar situation in which there was a denial of intervention and then a final order, and the court still held, but it could not be mooted by that final order of the Federal Commission. And Public Service Commission has not been overruled by this court and should still be followed. The site for that case, Your Honor, is 284 F2D 200, and that's D.C. Circuit 1960. I just want to make sure I understood what you just said, because I thought that you had already submitted any substantive comments that you had about the decision, and the only issue is really whether you're an intervener or not, and whether your motion to intervene should have been granted. And the only stakes for that is then you would have the right to appeal this decision. Because in terms of just submitting your thoughts and comments, I think that happened, and the Commission said it would consider, and I assume that it did, because it said it would consider those substantive comments. So, I thought the only issue now is this motion to intervene, and whether or not you could therefore appeal. Am I correct? That's the primary issue, Your Honor, and it's important that that's the issue, because FERC changed its rationale for the approval of the surrender without dam removal in between the EA and the surrender order. It dropped its rationale for environmental justice, and because that environmental justice rationale wasn't in the EA, no party had the ability to comment on it. And the American Whitewater's request for rehearing of the surrender order discusses the merits of that approach for the first time. So, it's not just that the consideration of the EA comments removed any possible remedy that American Whitewater could seek in this case. We had a case called Narragansett Indian Tribe Historical Officers' FERC, where we held that once there's no more proceeding before the agency, there's just no ongoing proceeding in which you could intervene, intervention, you know, even a wrongful death of intervention is moved. And given that nobody else has sought review, I just I don't know what proceeding you're going to intervene in. You're at that live proceeding. Yes, Your Honor, technically, the surrender proceedings are still live because the surrender order is not yet effective. It's only effective once SHOMI completes the operations for the decommissioning. Yes, but that is some paperwork and inbox checking and reports from so and so and so and so. And, you know, if they didn't do that, you could challenge their failure to get, you know, the engineer report saying they've decommissioned the plant. But that's not what you want to know, Your Honor, but the ongoing proceeding about the dam surrender, the surrender of the license and the surrender of the license without. Taking down the dam itself, if this court were to grant American Whitewater's request, American Whitewater would still be able to have that judicial review of the final surrender order. American Whitewater is not seeking to reopen the proceedings in any way. And this court found that after a denial of intervention, petition for review is properly filed in that public service commission case and no one else in public service commission has filed a petition for review. Not that I'm aware of, Your Honor. And in that case, it was still that they sought judicial review after a final order was issued. And this court still. I'm asking if there was in that case, was there still a pending proceeding either in this court on petition for review or before the agency in which you could have intervened? I just don't know what the proceeding is as opposed to forms coming in from dam operators. In that particular case, Your Honor, the proceeding was still before the D. C. circuit because of the history. Not necessarily a challenge to the merits before us by a party. American Whitewater did seek judicial review of the final, but it's just, it's the statute requires a petition for review by a party. That's just statutory with jurisdictional. We don't have a choice in that matter. And so in the public service commission case, whether petitions for review pending before this court from. People who are already parties, no, Your Honor, and that case, they were dealing with intervention petitions in a case very similar to this 1 and they're like, American Whitewater petitioners filed a petition for review of the intervention denial as well as a petition for review of the final. Order and this court in that case still found that this court could hear the intervention denial and that the case would not be noted by any action commission and the court provided reasoning there and saying that a contrary holding of mooting a case after a final order had been issued would create to ready a means by which the administrative agencies could support the power of a reviewing court to pass upon the validity of orders denying intervention. Such applicants for intervention have a right to judicial review of such denials unquote. But even if the court signs that American Whitewater petition could be mooted by an action of the federal commission, the capable of repetition, yet evading review exception to the mootness doctrine still applies. And that's because the challenge action here was too short to be fully litigated. The surrender order came down the day before American Whitewater supply brief was due in this case. And given the long standing, inconsistent practice of FERC on rule two, fourteens application to late intervention, it's reasonably likely that American Whitewater would be subject to the same action again. And if the court finds that the mootness issue is relevant, it has not been briefed by either party and American Whitewater would welcome the opportunity to brief. Why didn't you file a 20 letter to inform the court of these developments and to make these arguments? That are the developments that you're talking about, your honor, the surrender order or different development, the surrender order, and then you've already filed a petition for review of the surrender order. All that seems very relevant to what we're talking about here today. And you never brought to our attention. I think some law clerks found this information. I mean, it's difficult for us now you're saying it's not briefed, but part of that is your fault. Is it not? No, your honor, American Whitewater noted that the surrender order had been issued in its reply brief because it had been issued the day before the reply brief was due. And we noted in the reply brief that if this was an issue by this court, that should be briefed further. But in that particular instance, we noted it was in a footnote that there was nothing about the issuance of the surrender order that affects the particular validity of this case before the court. And that's consistent with the public service commission case that I was citing. I'm distracted you from making your actual intervention argument for a few minutes. Thank you, your honor in this case, first decision should be rejected for several reasons. The 1st is that it's interpretation is contrary to the text of the regulation, regulatory history and binding precedent. The most important issue here is this court's decision in Swanson Mining Corp versus FERC, where this court held the determination of facts of why a proposed intervener was unable to file a timely petition for intervention or D1 I quote, is not the full component of good cause under FERC's rules end quote. This is directly contrary to FERC's interpretation in this case, and that court's decision should be followed by this court. But even if this court agrees with FERC's interpretation of the regulatory language, this court should still reject FERC's decision as arbitrary and capricious. This court's precedent makes clear that even in cases where agencies have broad authority and discretion to act on requests before them, they still must apply decision making criteria in a consistent manner. In this court's decision in Aramark Corp versus FAA, I just want to make sure I've got this right. You were 9 months late to file your motion. And your only excuse was that you only recently became aware of this proceeding and you were unaware that the deadline had passed and you think it was arbitrary and capricious for the agency to deny your petition to intervene. That's correct, your honor. FERC has not stated any principle that after a set number of months, such as 9 months, being for the denial of a late intervention is warranted. And in this case, FERC is inconsistent. You don't dispute that that's a relevant factor. How late were you? And is there, I don't see any authority where the lateness was this late, 9 months, where they branched the motion to intervene. A relevant case, your honor, where it has been passed this level of time is cited in our reply brief, and that's the transcontinental gas pipeline case. And in that case, FERC granted late intervention to 2 governmental agencies and 1 non-governmental organization over a year past the intervention deadline, even in a case where they didn't find good cause. And there. But this is a discretionary call, and it's fact found, et cetera. And I just think it's difficult for you to say that it's arbitrary and capricious for them to deny when the only good cause that you gave was that you didn't know about it. The asserted good cause by American Whitewater, your honor, is not D1I administrative oversight. American Whitewater's asserted good cause is based on an evaluation of all of Rule 214D's factors. So, the fact that there was no evidence of prejudice or disruption, and that American Whitewater's interests would not be adequately represented by parties in the proceeding. And the D1I good cause is not the same thing as the 3 good cause. And so, this instance, the mere fact that there was administrative oversight does not doom American Whitewater's motion. And as this court held in Aramark Corp versus FAA, discretion to agency expertise is not an excuse for arbitrary and capricious behavior. The court held there that, quote, deference to agency authority or expertise, however, is not a license to treat like cases differently, end quote. And that's precisely what FERC made. Length of delay just by itself a factor, or is it only when it intertwines with prejudice, disruption, those types of things? To my knowledge, your honor, FERC has not stated a specific principle on a certain number of months should be of the timeline in which a denial should occur. Is that one of the D factors? No, your honor. And you're correct. Apart from, obviously, sometimes length of delay can affect prejudice or disruption. That's correct, your honor. And your honor is correct that to the extent that timing is considered, it really goes to the prejudice and disruption factors, which there was no evidence of in this particular case. And FERC has on many occasions looked at a lack of prejudice and disruption to find good cause to grant late intervention. And so the fact that FERC has departed from its precedent, finding that an evaluation of the Rule 214 D factors is the free good cause, is arbitrary and capricious in this case. And finally, I just want to note that the danger of arbitrariness in this case is heightened. As this court found in Network IP LLC versus FCC, where regulation standards are, quote, opaque, the danger of arbitrariness or worse is increased. Complainants the agency likes can be excused, while difficult defendants can find themselves drawing the short straw, end quote. Where FERC is so inconsistent in its precedent of applying good cause, administrative oversight, and the Rule 214 D factors, there's nothing stopping FERC from applying Rule 214 in a way to keep out flaws from its decision in the record and to prevent interested parties from seeking judicial review of flawed decisions. For the foregoing reasons, American Whitewater respectfully requests that this court grant a petition to vacate FERC's intervention orders. Thank you. May it please the court, Houston Schainer for Federal Energy Regulatory Commissions. I'd like to begin with the threshold question of mootness that the panel was interested in. I fully agree that at this point, the merits order in this case is a final and non-appealable order that should only be subject to improper collateral attack. As Judge Millett pointed out, the merits proceedings have largely finished. I would like to add a gloss on that. My friend has corrected their post-order submissions from the current licensee to a work field office, and then the field office will issue approval of the surrender of the license, at which point the Commission will lose jurisdiction over the project entirely and jurisdiction will revert to the state. I understand that my friends in Canada, I understand my friends have moved for an administrative stay at the Commission level. I do not, I'm not aware of a Commission action on that right now, so as I understand it, the surrender order is still entirely in effect, and because they were not... Actually, something I'm really confused about, because the surrender order says it will not become effective until you get this Commission of Dam Safety letter saying, until the Commission gets this letter from the Division of Dam Safety saying the plant itself... You have proper compliance conditions of the ordering paragraph, and at that point... Project facilities are decommissioned. And at that point, the license surrender becomes effective. What does effective mean? The Commission loses jurisdiction over the project, the license has been surrendered. And so it just means you lose jurisdiction to... So is that sort of the last report? Because it seems like there's a number of reports or things that come in. There are various submissions, both... Does this have to be the last one, then, if you're losing jurisdiction? The letter from the field office is the last sort of statement that would terminate the Commission's jurisdiction over the dam, as I understand things. Do you know where we are in that process? Is that the only thing that the Commission is now waiting for? Have all the other paperwork been filed? My apologies, I don't know that exactly in terms of the submission, but I would understand the letter from the field office as being the critical event here that would terminate jurisdiction entirely. Listen, just to assume hypothetically that we found in FERC, this is not only made an improper decision here, but imagine we actually said you improperly denied intervention. So I know there are steps there normally, but just for this hypothetical, trying to understand how this all works. If we had decided you were improperly denied intervention, they, of course, should have been allowed to intervene and remand for action inconsistent with that. What would the Commission do with the fact that it had a proceeding go forward without somebody who was supposed to be a party? To be frank, Your Honor, I'm not sure that we've seen an example of this, in part because the court, as I understand it, has never... Well, see, that is a Public Service Commission case. That is true. I believe... It's not exactly FERC. I think that was a Federal Power Act case before the Commission and, frankly, before a lot of modern standing, rightness, and jurisdictions generally. So I'm not sure how truly viable it is in this case. I think Narragansett is probably a much better factual analog here where the facts really have changed, and the key facts here are that the order issued, there were 60 days for a party to the proceedings. We have both cases on the books, and I'm not sure what to do. I mean, I haven't found... I think we've cited Public Service Commission relatively recently in the beyond nuclear decisions. So I don't think this panel is at liberty to brush it off. That's true. It is still a good case law, but... FERC's sitting there, and it's got this precedent. I think also that the statements on sort of what would happen in terms of future Commission proceedings are at best dicta because the procedural rules might have changed, and it doesn't lay out a clear path. Have they changed? Well, I believe... You have the authority to reopen, and that's what was discussed there. So you'll have to reopen. We do have a reopening rule, but as Your Honor noted, all of the substance that Petitioner would raise in the merits proceeding, they've already done that. The Commission started reviewing it, so there's no... I know, but we don't want to review it. I think they would like... I think that is... They disagree with that decision that you made, and they would like review of that. That is true because the court only has the procedural order in front of it right now. There is no relief they can direct towards the procedural order. I mean, there's no sort of pending Petition for Review on the merits. Well, there is a filed Petition for Review. Whether or not that's a proper Petition for Review is certainly up for debate, but they have certainly filed that. That's just asking the same question again about how something like this gets remedied. Well, I think everyone understands the statute requires a party, a proper party to file a Petition for Review within 60 days. That didn't happen here. My hypothetical was, assume we say, wow, they should have been a proper party from the beginning. Well, I think the way that would work is the... But first, they precede that by... Well, the Commission under Chenery gets the chance to make the merits, sorry, the procedural decision the second time around. The Commission may or may not do that. Certainly, you may relax the requirements because it's procedural, but here, we're looking at the end state, and we already know the substantive outcome. So, if you're thinking of like the footnote from Lujan, where it might change the EARS, we already consider their substantive arguments in their comments on the environmental assessment. But they also don't have a... I mean, it's the value that's well recognized is that they get a chance. That was the same thing in the Public Service Commission case, and now they got a chance to get judicial... Well, I think the opportunity for judicial review of orders is downstream of two facts in this case. One is simply that they waited a very long time to intervene in these proceedings. If they hadn't done that, they might have been a proper party, and then they could have brought a proper peer request and proper position for review. So, that was something they could have solved on their own. Secondly, they could have sought expedited briefing in this case. They understood where the substantive proceedings were at the time that they were denied intervention, and at times, they filed their initial petition for review. They did not do that. That's a clear path for a relief where the merits were had an issue, but they didn't. And for that reason, the current order is final and unappealable. I'm rather... I'm also just confused about the state of FERC rules on intervention. So, in a case called EE that was in 2020, so post... EE Pipeline. Yeah, post-Tennessee Pipeline, supposedly new strict rule. Like I said, it was only for natural gas, strict rule. Commissioners said it would commonly allow late intervention as long as the person came in before the end of the comment period in environmental impact study cases. Um, which this would fall exactly within that, but the commission said, well, we won't do an environment... We will not do that in environmental assessment cases. Is that still the rule? And if so, what on earth is the rationale for saying this very same intervention would have been permitted if you were doing an environmental impact statement? So, as I understand it for EE Pipeline, along with the other three commission decisions, I'm sorry, the two other commission decisions in Pluton 36, as well as Broadview Solar, in each of those instances, the party has been 6 to 12 months late and the commission found under factor D11, because they had such an egregious delay and did not have good cause for the timing of their intervention, that was sufficient to deny intervention. I just... I'm asking you about... That wasn't the rationale, which said there. What they said was, they or the groups filed their late motion to intervene during the comment period on the environmental assessment. This is paragraph 24. On the environmental assessment. While the commission's regulations provide that any person who files a motion to intervene on the basis of a draft environmental impact statement will be deemed to have filed a timely motion, is filed during the comment period. That provision is inapplicable where the staff prepared an environmental assessment instead of an environmental impact statement. Understood. As I understand it, that case was unique because when the commission issued notice of intent to prepare an environmental assessment, it indicated in that notice that parties were welcome to intervene. That did not occur in this case, and as a matter of practice does not occur in most environmental assessment cases. As I understand it, that was part of the basis of Commissioner Glick's dissent. In that case, because the commission had made an affirmative representation of a second opportunity to intervene, which is the standard practice... Commission's regulations provide. Was there a... So that wasn't a one-off. If it's a regulation. Well, I believe... Do the regulations still provide that? As I understand it, well, the regulations have changed because of the CEG changes, as I understand it. But my understanding is... Do the regulations... Yeah, go ahead. The regulations, as I understood them, provided a second opportunity to intervene for environmental impact statements. As long as you're entering the comment period. For environmental impact statements. Because they had, by rule, a separate opportunity to intervene. It's not my understanding that that was true for environmental assessments, but I have to be frank that I don't have the CEQ or FERC rules that existed at... Really, the CEQ rules existed at that time. But my understanding is that that environmental assessment was a one-off. Why wouldn't you have... What is the rationale for treating... Environmental assessments. Environmental assessments versus environmental impact statements. Environmental impact statements are much larger, as this court knows. They're much harder work. And by rule... Yeah, the last thing you want is more people jumping in at the last minute on those. Well, recall that in the EIS cases this court has seen, there's often a draft EIS. And then a final EIS with a comment period in between those two. And that comment period, in cases like Healthy Gulf or Public Citizen, can be decisive in terms of forfeiture. Here, we just had an EA published. The parties were allowed to comment on it. You had a credit published and parties commented. And so you were taking comments and they intervened before that comment period, long before that comment period closed. In fact, they were identified in the assessment itself as having filed a motion to intervene. So before that... Yeah, on that point... I'm trying to understand what the purpose... I mean, I don't understand. It sounds like you just want to argue they were nine months late. But that has never been a factor. But oddly enough, FERC has tried it out. I mean, they had interventions two years after the deadline. I disagree with that, Your Honor. A few points there. I think the length of delay is germane to the D-1-1 factor. And I think we see that in cases like the three cases in footnote 36, as well as W-E pipeline, all of which are six months to one year of delay. And the commission says, you failed on their D-1-1 factor. You do not have a good explanation for this delay. And that is sufficient because this rule gives us an ample amount of discretion, as Judge Pan noted earlier. Hang on. I think it's also important because... Let's be clear. You just said it has nothing to do with lateness, other than it flags the time period being analogous to this one. Well, I can go to the weight of the factor. And I think it's also germane to... Wait, where? Where has the commission said weight of what factor? Which factor? D-1-1 factor. But even if it's... Which? The good cause. D-1-1 factor. Correct. Sorry. You mean the good cause? D-1-1. Good cause for the failure to file late. Correct. Correct. The first factor... Okay. They're already late. Okay. Where has the agency said? Because what you just said to me does not communicate that we independently, apart from prejudice disruption, we independently look at how late you are as part of the good cause for being late. The last minute of paragraph 13 of your hearing order here mentions that... Oh, before this case. Before this case. Well, it is citing other cases, and I believe it's... I know. Did any of those cases say that? Yes. They say that the D-1-1 factor is important for the orderliness of commission proceedings, and the commission also noticed it's important to promote efficiency and timeliness. Even if that were the case... But you're affected... Even if that were the case... Wait, wait. I'm just trying to be clear here. So it sounds like the answer to my question, have they ever before said that length of time alone is a factor in determining good cause for being late? It sounds like the answer is no, because I haven't heard it from you. Yet. And then you say, well, we want efficient proceedings, and that makes perfect sense. That's when lateness would go to disruption. Not necessarily. Not necessarily, because disruption might be in the individual circumstances. How is it efficient? And see, we're still... So... You acknowledge them in the assessment itself as being interveners, I think. I disagree with that. I don't believe that's the correct characterization of the record. We acknowledged at, I believe it's JA-42, that they filed a motion to intervene. Okay, this one. I'm not sure how many were there.   I mean, they didn't have to file a motion to intervene to comment. I mean, that's the strangeness of your position, because anyone, it's open to anyone in the public to comment on your environmental assessments. And every one of those people who comments is coming in, they're coming in at the same time. And you don't say, citizens, we've invited public comments, but now we're going to all say it's too late, it's too disruptive, it's not efficient to have your comments. No, we didn't reject their comments at all. We rejected part of that.  So there was no efficiency. I don't understand what efficiency... You're asking... Well, because it's setting an example. You can think of it, perhaps, this might be a little too esoteric, but rural utilitarianism versus act utilitarianism, or just the precedent. You're beyond me. Okay, sure. I'm not an expert. The precedent in this case, in terms of timeliness, if we were to excuse every, first of all, the rule does not require us to make a prejudice finding or disruption finding, but the commission needs to enforce its rules so parties understand that they want to be involved proceedings for future cases, for example, they need to intervene on time. Here, they were put on notice, not once, but twice, and still waited a long time before they actually intervened. Now, whether or not they found comment is irrelevant to that, because we consider the substance of those comments. I would also understand... Sorry, your rationale was we need to have efficiency in doing this, but this environmental assessment is a process where there's nothing remotely inefficient about somebody showing up and commenting. First time you've ever heard of this party, not party, sorry, it's the wrong word, commenter, is when comments are sent in. The last day of the open period for comments, and there's nothing inefficient about that because it's a public comment period. So, I understand other situations that may be efficiency, but normally something makes something inefficient that would... That's exactly what Tennessee GAS says. We apply these rules more strictly because we've created bad precedent for other parties who are sleeping on their rights, and if we do that here, we're likely to encourage entities like American Whitewater to come at the last minute, perhaps even after a merits order issue, and say, well, what is the harm being done? You have a whole different rule for after-merits board. Well, no, no. That's not what happened. I disagree. There is a different application of Rule 214. That's an extraordinary circumstance. But City of Orville says that is a refinement of Rule 214 itself. It's an outgrowth of the rule. It's not independent of that rule. Go back to your... It's just a... I mean, that is a really difficult standard to meet, and it's obvious because anything that comes in after decision, I mean, it's going to be hard for... I can't imagine how they're going to avoid the disruption and prejudice box. But that rule was based on, say, a presumption of prejudice, and they may not... The commission doesn't necessarily need to make a prejudice finding, but this goes really to the permissiveness of the rule generally. There is no requirement in the rule that the commission make a finding of harm to this proceedings. If you don't meet Factor D11, that is sufficient. That is what this court said in City of Orville. That is what the Ninth Circuit said in California Trout. And there's no requirement for that. And because the rule is... You didn't apply that rule in DTE Energy, Athens Utility Board, West Texas. Maybe West Texas was so close. I don't know if that... Sure. ...was brain powdering. Let's get to these. Can I start with Swanson Mining before I get to the reply brief cases? I think there are two, both Swanson Mining and all the cases in the reply brief. The most important issue here is that absolutely none of these cases were mentioned at all in their hearing request to the commission. So if they expected response to specific precedent, it should have been in there. And now they fault us for only raising those cases on appeal. Now, Swanson is distinguishable, and I think actually helps us nonetheless, even if the court considers it. Because the commission, while it did not find that the D11 factor had been satisfied, was a completely different type of situation, factually distinguishable, because there a state resource agency had alerted the commission to a patently unlawful exemption that it issued under inaction. And that state resource agency had a specific statutory duty. There's nothing like that analogous to this case. They are an ordinary run-of-the-mill party. I guess what we're trying to understand, or I'm trying to understand, is every case can be distinguished. That is correct. And that is true because... The question is, what does the commission hope to accomplish with its rule? To promote the timeliness and efficiency and orderliness of its proceedings. And what I understand Judge Millett's question is going to, is that's all well and good. But there are some indications that that is not how the commission has been applying the rule. And so here, in some of the cases you cite where the court has sort of made false, not dispositive comments about timeliness is important. But that wasn't your argument here, or not to you, but the commission's argument in denying intervention. There wasn't any suggestion that the commission process was treacherous. That had the American Whitewater notified the commission earlier, that the commission would have changed course, or done another study, or looked to other issues. That's not this case. That's correct, Your Honor. And so the question is, why couldn't they come in? Because everybody else could come in. That's why, that's all. And you have a rule, and if you want to say you have to be a filer by 60 days, then it applies to everyone, you know. But that's not the way the commission has used this rule. So I asked my clerk to find any instance in which the commission had denied intervention of a public interest group, as opposed to a utility. And the closest we could find was, well, there was the state. All right, but the state is not representing the same interest that the petitioner's fear is purporting to represent. So I couldn't find any case. Do you have a case? To make sure I understand the question, Judge Rodgers. In other words, industry gets in, anti-industry doesn't get in. So I think that certainly industry interveners are often denied intervention. It's the commission doesn't determine it by the NGO versus industry status. And I think actually, to return to Judge Millett's question a bit, the Transcontinental Pipeline case that they cite in the reply brief, which is doubly forfeited because it's not in the hearing request or in the opening brief, is a good example there. In the same paragraph they cite, the commission. I haven't cited that one, but go ahead. They commission, I'm sorry. That's not one of the ones I listed. Go ahead.  The commission denied intervention to a non-industry group called 1.5 Degrees LLC because they had no good justification or no good cause in their filing. My friends say that the commission responded, the commission granted intervention to the Watershed Conservancy. I believe Judge Millett was mentioning roughly 15 months afterwards. But what they left out of that is what the Watershed Conservancy said in their motion. This is page two of the motion from the administrative docket, accession number 2022-1118-5224. ATWC, the Watershed Conservancy, is a small volunteer-based organization that does not have any lawyers and therefore did not know about the requirements of becoming a party until now. That is in stark contrast to the petitioner here, which is a repeat player before the commission, was put on notice twice and is able to call on the capable skills of not only in-house counsel, but at least in this proceeding alone, outside counsel from three different organizations. So I understood the point to be, we need to be able to control our docket, all right? That is certainly a big consideration, yes. Well, I mean, I'm surprised you didn't focus on that in this case. Well, we did. You have people coming in nine months later. I think that's where you were going. That's a bad precedent to set, saying it's okay if you come in nine months later. Well, Judge Roger, I believe paragraphs 10 and 13 are making exactly the same points that you're making here. The last sentence, paragraph 13, talks about why the D1-1 factor is critical to the efficiency and timeliness of commission proceedings. The footnote appended- I'm getting at a slightly different point, I think. Maybe I haven't made myself clear. Perhaps, or I'm sure I misunderstood. The commission cites ALCOA, for example. And in ALCOA, the commission makes the point about it's important to know as early as possible so other interested parties will know what the issues are likely to be and come prepared. And I thought, having done a lot of agency work myself, having been a judge, I mean, aren't all these rules designed to enable the agencies to handle their cases efficiently? And they have limited resources, and so they want to know up front what the issues are going to be. And they're going to plan their research accordingly.  And if somebody comes in late, then they have to start all over again, or they have to do some additional research. That was not the argument, as I understood it, being made by the commission here. Rather, I thought the commission was saying, look, you're nine months late. You had notice. You're a repeat player. And you don't give us any explanation for why you were late other than you overlooked it. And that's not enough. That's not good cause. End of discussion. And you quote some dictum in various circuits, and one circuit goes much further than even the commission has gone in terms of what it requires under its rule. And so if we get to that issue, it ought to be a simple case. Well, I think it is certainly a simple case, and that's because the rule says the commission may consider any, all, or really some, none, or all of the factors in paragraph D. Here, we consider the D11 factor, and that is sufficient under the text of the rule and this circuit's precedent under the city of Oroville, as well as your Honor, Cal Trout. Now, it is true that the commission didn't make a specific finding on prejudice to these proceedings, but as your Honor noted, the commission notes all these factors because they all ultimately get at the same sort of issue fundamentally about the efficiency and integrity of commission processes. So while we might not make a finding of disruption and prejudice and query whether or not those overlap, the fact that we can make a finding on the D11 factor is plainly sufficient under the 214 rule here. So the rule is- I think I've come at this from somebody who's been a trial judge. And to me, like a deadline is important. A deadline is a deadline. And if you miss a deadline, then the burden is on you to explain why this deadline should not apply to you. And I think that it's really hard for me as a former trial judge, perhaps, to say that a nine-month delay is no worse than a one-day delay. Like, to me, like this is just a standard thing that you look at when you're looking at good cause. And even beyond the time limit, all they said was, we missed it. I mean, I feel like the process here is the commission is obligated to publish this. And that's how people are put on notice that there's a deadline. And if you miss the deadline, the burden is on you to show good cause. And if all you can say is, missed it, didn't see it in the Federal Register, that's not good cause. So to me, if we get to that point, it does seem to be a simpler case. The rule is not anybody who wants to come in can come in if we're not that far along in the proceedings. Like, that's just not the rule. And even if it's been applied that way in some occasions, to me, these are just such fact-bound decisions in each case that I think it's hard to draw a rule and fold the commission to it. That anybody who comes in when there's no prejudice determined by who, I don't even know, then they should be allowed to intervene. Like, I just don't think you can run a process this way.   Your Honor is exactly correct. That's no way to run a railroad. It creates a terrible ex-ante incentive if they just mail it in with a one-sentence non-explanation about why they waited nine months to file. And the rule doesn't say the commission has to go beyond that. And here, the rule is written. You know, you're not a district court. We're a commission that runs large, multi-party proceedings. I understand what the commission does. I'm fully familiar with that. Now, you have a rule that multiple commissioners themselves have said is inconsistently applied post-Tennessee. That doesn't fix anything. Well, obviously, the other commissioners didn't agree with Commissioner Danley. Who said it was inconsistent and wrong? And who said... I mean, you had Danley and Glick, and then a third one who thought our rule's broken and should be fixed anyhow. So, you've got them already saying we're not consistent. And a majority of commissioners believe that they are. I'm happy I let you talk about cases I didn't mention. DTE Energy. Sure. DTE Energy. It was a late-filed motion to intervene. It was granted no discussion of good cause, given their interest in the preceding, the early stage of the proceeding, and the absence of undue prejudice or dolefulness. Well, I think DTE Energy has the same problem as West Texas Pipeline Gas, Athens Utility Board, Duquesne Lighting Company, and Swanson. It's not raised in the review request. And other than Swanson... I'm going to assume the agency...  We have this rule that unless there's good cause, we don't grant it. They've checked. They've done their homework to make sure they actually have that rule. And when it turns out they don't have that rule, and they didn't have it for these companies, in this case, power companies, or gas, or oil, or whatever it was, but we do have that rule for American Whitewater, that's a problem. And then we have... These are the cases I want you to address. Athens Utility Board. All right. Granting late intervention because it will not disrupt proceedings or place additional burdens on existing parties. Nothing there about you've got to get through the good cause. You could have this rule. And you could also have a rule that says, we'll do these factors, but if you're after three months, six months, nine months, you pick the time. You're out of business. If I could make one high-level point for all of them, before I get into the individual facts. I think Judge Pan's insight here is very important. The rule is written to maximize the commission's discretion. It's reviewed for an abusive discretion standard. That means the commission is entitled to draw factual distinctions among parties. And in this case, they face a very high burden of showing an identically situated party was treated differently. I'm just going to give you some more. Sure, sure. None of the... This one. None of the... If this one was setting the rule... None of the parties... We do not find PJM's reason... PJM. We don't find their reason for delay persuasive. This was to be clear after this decision. But every other rule criterion points in their favor. So guess what? Intervention was granted. When it specifically found we don't find good cause. Now with PJM, it wasn't an environmental organization. And then we had vector pipeline and an opposed... Nothing here was opposed. Opposed motion to intervene. While we find that INGIA has not provided good cause, looking at the other factors, we're going to let them in. I mean, we have an obligation when someone brings the issue to us to make sure that the commission apply... When someone says it's not being applied in an even-handed manner, we have an obligation to check the pattern of decisions here. And it's the commission's own mouth here. So I'm going to skip DTE for now. We're going to go to a group of cases. No, tell me about DTE. Okay. PJM or... Oh, sorry. I threw a lot at you. I'm sorry. So let's start with DTE. DTE. So DTE, West Texas Pipeline, Athens Utility Board, Duquesne Light. I just... No. Okay. Sorry. You want to start with DTE. I'll call them out one at a time. How about that? We'll be clear because you keep referencing ones that I haven't. So DTE. It's factually distinguishable. The delay there is less than two weeks. Where does it say that in the analysis granting the motion? Paragraph 11. No, no, that's not discussion. That's just a description. That's a background description. Well, certainly, I believe... Where does it say in paragraph 21, which is the entire explanation of their decision granting it, that how long makes it... The commission could do it. They could say it's an independent factor. But they haven't. The only time they've mentioned expressly time being too long is when they then tied it to prejudice or disruption. They could have that rule. They don't. And there's paragraph 21. Tell me what in paragraph 21 distinguishes this case. My apologies, Your Honor. I don't have paragraph 21 in front of me. I'm sorry. But I can tell you that reading the decision as a whole makes it clear that it's a very factually different case. Again, it's only... No. The only fact you've identified is a time thing, which the commission chose not to rely on because it didn't affect the absence of undue prejudice or the like. So, Your Honor, paragraph 10 clearly mentions the delay. It mentions seven months between the notice of intervention and the notice of intent to prepare an environmental assessment. It then mentions a two-month delay after that. It then also mentions sophistication of the parties. But Your Honor also pointed out, even if this is not a D-1-1 factor itself, those facts can still be relevant to the commission's decision because the list of factors in D-1 is not exclusive. As this court said in the city of Oroville, the commission is not required to do any of that. And that's why, if I saw a pattern here of the agency being consistent on timeframes and, I mean, one, it could announce a rule, which would really be helpful to everybody, the commission. If it really wants this efficiency and lack of disruption, it could announce a rule and it could... I'm not going to set it. Three months, six months, you tell me what you think would make sense. I don't know. That's not my... You do see a pattern. In footnote 36, we're here in order. Venture Global, CP2, EE Pipeline, Broadview Solar, STS Hydropower, all of those cases are in the six-to-one-year range. They're nothing like DTE, which is under two weeks. And the rest of the cases in the reply brief, which are a month or less in terms of delay. I know, but that's not the rule they've adopted. You have to admit that's not the rule they've adopted. But there isn't necessarily a rule that says that, but it is a clear pattern for these decisional cases and obvious from the decisional law. And it requires incredibly, I think, somewhat tendentious reading to say that the length of delay did not matter, particularly in this case. I'm a tendentious person, at least when it comes to agency, because I expect the agency to say it and not for me to have to knit it together and then somehow figure out why the 18-month or the two-year delays were different. Well, I think it's remained to the do you want one factor is good cause under paragraph D and different to the sentence. And that is because the justification they raised was that they were not aware that the intervention had occurred. But they are charged with a constructive notice under the Federal Register Act, which means that they had been supposedly not aware of this case for seven months while it's proceeding. And then the agency put them on notice again independently for a second publication. So, in some sense, this case is truly unique because there's the notice of intent for parent environmental assessment. We put them on notice that this- They participated in that. They did. But they did not move to intervene until two months after that. They sat on the rights once again. Two months is too long now as well. It certainly can be under Rule 214, which is- We don't know when two months will be and when it won't be reliably. See, and the other thing that's odd about this case, candidly, is that you had comments, so the institutional delay to the agency that could result in prejudice isn't present here. And that was the only explanation I came up for myself as to why the agency hadn't mentioned that aspect of prejudice. Because there is no prejudice here. Because the agency knew exactly what American Life Water was going to say, were it a formal party in the case. And it proceeded. So that line of prejudice doesn't work here. You're correct, Your Honor.  You're correct, Your Honor, that- And so all you had was they're too late, they had notice. All these other cases, there was public notice. And most of these utilities have permanent legal staff, if not firms on retainer. And so they were on constructive notice as well. But good cause was not enough to keep them from having intervener status before the commission. That's what's so troubling here. Aren't you concerned about that? If we're talking about- Your Honor may be talking about the PJM case. I will certainly note that it is correct for the commission to not rely on a finding of prejudice in this case. But this is just like what Judge Bann noted, this is no way to run a railroad. You have to set proper- But that's where it's so unconvincing, given that the commission's been all over the waterfront with its rule. All right? And I have even come up with a list of factors based, not factors, but what elements, based on your presence. Considerations. Considerations, thank you, that the commission has used. But the normal ones that you're talking about today, and that the commission raised in this case, are not present. That's what's so odd about it. And I thought initially when American Whitewater was listed in the EA, I thought, well, it's a typographical error. You know, somebody thought they had actually- their motion had been granted, but in fact it hadn't. So somebody, you know, and their cause and effect argument, I'm not persuaded by. They say we filed negative comments, two weeks later, the commission denies. That doesn't persuade me. All right? But it is concerning that the commission doesn't address the fact, asserted by American Whitewater, that they represent an interest that is relevant to the commission's decision-making that is not otherwise represented. So back to Judge Millett's point about these are agencies. They want to hear from everybody. They want to get the public view, so they make informed decisions. And someone who's late says, look, I have a point of view that's not being represented, and the commission ought to consider this before it makes its decision. So I thought, well, the backside of that is, well, the commission took their comments into account, presumably. But, of course, the key point on intervention is you become a party, and you have all kinds of rights that you don't have as a member of the public to submit comments. So that's why it's so critical that we have a rule that we can understand. So one, first, to be honest, question, I would direct the court to flip, I believe it's the last footnote in the hearing order. I believe that's footnote 43, where, in fact, there are several other parties and commenters who raised similar arguments about dam removal in this case. But the commission never addresses American Whitewater's claim that they represent interests that are not adequately represented by anyone else who is a party before the commission. I didn't see the commission challenge that at all. Now, you have the Department of Recreation in there. You have other people. But the Department of Recreation may have a lot of interest. You know, it's got capital costs as well as operating costs, et cetera. That's not what American Whitewater is talking about. That's not what they say their members are concerned about. And yet the commission doesn't want to give them standing, as it were, in its proceedings. Well, the commission didn't need to, Your Honor. The point is well taken about other entities. It didn't need to. But shouldn't it have a rule that makes it clear what's going on? If the court, perhaps the court might think the rule should read, must consider a list of exclusive factors. But that is not the way the rule has been written. It is not the way the rule has been applied. The rule is final and unappealable. It can't be challenged on its own. This is the rule we have in this case. And that rule is interpreted by this court and the Ninth Circuit, says the commission can consider individual factors, but need not consider all of them. Well, with all due respect to our sister circuit, it also says the commission has been consistent in applying the rule. All right? And I think we have. And I think that we're here in order to demonstrate that, particularly with footnote 36, adding Broadway Solar. And I think to discuss about inconsistency, it's just critical that I talk about individual cases here. But I've tried to offer the court distinctions to the extent that they get in. Their decisions raised only on reply and not in referring. I don't believe I've addressed Your Honor's point. I think reference to PJM and Judge Millett's reference to PJM. So I'd like to address that now if that's possible. As I think the court knows, the fact that the agency might make a separate decision later after the order is under review does not make the order is under review arbitrary and capricious. That is well-established law. And that's true. I can give you one citation. Look, I mean, we are all familiar with the rules of agency after review. But the difficulty here is we've got cases before and after that show a pattern of inconsistency. We don't need to rely on the after ones by themselves. But, you know, at some point, do we have to stick our head in this? I mean, if you had been fully consistent up to and through this decision, and the wheels just came off after this decision, your point would be extremely well taken. Well, it does address a certain number of cases. But to Your Honor's larger question. No, my point is that when we see, sorry, I do know, I owe you a finishing sentence. I apologize. But just when we see this stuff before, and it's inexplicable, and there's commissioners going, what is the rule other than inconsistency? Consistently inconsistent, I think Commissioner Danley said. And then we look and it's like, it seems to be getting worse even afterwards. That's what seems troubling to me. So I'm not relying just on things may be changed after the fact. I take your point on that. Go ahead. As the commission noted, I think in paragraph 13, what is being construed as inconsistency here is simply a degree of matter of fact, specific determinations that may involve some of the D factors, but not all of them. Maybe none of them. The commission isn't applied to require any of them. So the commission is entitled under its rule. Inconsistency, to be clear, is that we were told in this decision, we do good cause first. And if you don't get through good cause, you're done. It's sufficient. And that is true under Venture Global CP2. We don't look at the other factors. If you don't, that's what happened here. Because they met every other factor. But you didn't meet good cause. We're not going to talk about them. And then we go to other cases and we don't either discuss good cause. The commission doesn't discuss good cause at all. And grants intervention. I mean, I read the decision in this case is not just sufficient, but necessary to have good cause. That's what I read the commission saying here. And then we read ones where they don't even talk about it at all. And then ones where they say, this is not good cause. But the other factors are met. So we'll let you in. Well, it's not necessarily the other factors. It may be something entirely outside the factors like Swanson Mining. I did not mention Swanson Mining. I know you keep wanting to go to that very old case that long predates even your Tennessee gas, where supposedly we're trying to clean this up. Cynthia, I have for the commission. It just, it has to hold a line. And again, you can react and go seven months is too long. But that's not, the commission, you want to run a railroad, right? The train is leaving at this time. If you're not on board, you're not on the train. Okay? You set a hard time limit. If they don't want to do that, then they can say, well, length of time itself will be a factor. It'll be one of our considerations. But they haven't even said that. The only times they've talked about it, apart from this case, is when they did it in a sentence explaining prejudice or disruption. That's the concern here. Well, the factors aren't necessarily hermetically sealed. I mean, for take disruption and prejudice, I'm not sure how the court necessarily distinguishes between those two. Obviously, there's lots of overlap. But even if, you know, even if those factors aren't in play, disruption without prejudice, you know, when prejudice often is looked at to other parties, but in many cases, disruption is, in many cases, disruption will apply prejudice, right? But the commission might make findings differently. In the same way with good cause under D-1-1, right? Sometimes it may create prejudice, but sometimes you may be concerned about the ex-ante incentives it creates for the whole process, in terms of prejudices in future cases later, because we do need to draw a line somewhere. And the commission has done that here. And in many cases, it's cited. And I think ultimately, the other consideration we haven't talked much about is really that the commission hearing order is responding to a limited set of cases that they raised on their hearing and their hearing request. And they raised a lot of them, and the commission went through all of those. Now, most of them were just non-responsive because they were ALJ cases or because of it, but they didn't raise the cases that posted the orders. But the only two cases they properly raised where they can make this argument were Erie Hydro Boulevard, that's responded, that's answered in paragraph 12 of their hearing order. And in note 37 of their hearing order, which is the Woodpulp decision. In both those cases, the facts were very different, and the commission explained why the facts were different. Essentially, both equated to a failure of notice. In Woodpulp, note 37, the entity seeking late intervention was in Canada, so not deemed to have constructed notice via federal register publication, had never participated in commission proceedings, and nonetheless, still managed to intervene only one month after the deadline. Now, in Erie Hydro Boulevard, the Citizens for Hinkley Lake case in paragraph 12, the commission essentially admitted that its own notices to have two interrelated proceedings created some confusion. Nothing like that is here. That might also be something like a EE pipeline where the commission mistakenly offered an opportunity to intervene in environmental assessment, even though it was not an environmental impact statement. But those cases are distinguished, and that is the only universal cases they have properly raised on the hearing in this case. And in the opening brief, for that reason, I would ask the board to affirm. I'm sorry, most of the questions are made. I'd add just a couple of things. One is just, it just seems to me that if you're applying the words of, you know, 214, it says you may consider a bunch of factors, including whether this disrupts the proceeding, whether the interest is adequately represented. So it's a permissive thing. And what I'm hearing from the tenor of this discussion in the colloquies is that if an agency has discretion and has factors it may consider, if it often, or it seems some people think always, treats certain factors a certain way, then they lose their discretion in every case to not consider those factors, even though the rule says they are allowed not to consider those factors. And I guess that leads me to wonder, is it really true that the commission has never denied an intervention motion just because you were late and you didn't have a good reason? That seems to be the tenor of what I'm hearing here. Like, you never do this. You were late, you didn't have a good reason. You know, we've done exactly this case in multiple other situations. Venture Global CP2, they say the FISH, the NGO is, name is abbreviated by acronym FISH. You didn't explain the D1-1 factor, that's sufficient to kick you out. It was sufficient on its own in Broadview Solar, in EE Pipeline, and in STS Hydropower. Three of those cases are collected again at footnote 36. And in all four of those cases, the commission says you mailed it in on D1-1, we're not going to excuse that. You were on notice because of our cases that this is important. We may consider this factor, and that is sufficient. And it's incumbent on the petitioner here to really show that something like, I think international transmission companies in the red brief is also a good analog there. It was a very different sort of proceeding under the Federal Power Act transmission incentives. But the commission had a policy of making fact-specific determinations just like it does here under a rule designed to allow it to do exactly that. And when that is the case, the parties to show that the facts or there are no materially different facts here, they haven't done that because they fit well into the time range of the four cases I mentioned. Plus, they are sort of unique in that they got a second notice from the Notice of Intentional Repair to the EA, and sat on their hands for two months. It's true the commission did not make a... The reason was we didn't know about it, but then they did know about it for two months and they still were late. Well, the reason essentially that they didn't have actual notice, but by federal statute, they had constructive notice.  But then even then they had actual notice. They waited, I guess is your point. A fair amount. I guess my... And then my other question is about mootness. And it just seems to me that if we were to rule against you, you could reopen the... You could reconsider whether or not the intervention motion should have been granted. Using more factors or not, whatever. I actually think that is a great question. I think there is an important factual distinction. Once the letter issues, the commission loses jurisdiction entirely. I don't know how we could reopen that at that point. Okay. I thought you said that had not yet happened. It had not yet happened. So what's the timeframe in which this ruling would have to come down for it not to be moot? When will it become moot, I guess? I don't know. And if I knew, I couldn't tell you. Well, you do have a pending motion for administrative stay that would also include issuance of that letter for precisely this reason, right?  I think it's administrative stay. There is a pending motion for administrative stay from the petitioners, yes. That was filed on... I think it includes issuance of this letter. I understand that that was filed sometime last Friday. I believe... I'm not sure the status of that. And I have no idea whether... No, I'm just saying there's... I believe that mentions... I mean, counsel can correct me if I'm wrong, but that includes asking a stay of issuance of that letter for precisely the reason you just mentioned. Once you don't have jurisdiction, I don't know what anybody's going to do.  That is my understanding. Well, you could always write a letter and ask them to withdraw that letter because of the decision by the court, which makes it mandatory now for you to reconsider whether or not America's life is at risk. Well, I think the court's relief at most in this situation, Your Honor, would be limited to vacate or offset intervention orders. Sure. No, I understand. But we're not sort of in an impossible world. And if the letter comes tomorrow... The other thing I'm concerned about is when judges ask questions, they don't necessarily and often don't indicate what their views are. And I can see all kinds of reasons why agencies have this kind of rule, where they have a lot of flexibility. And they give you a signal that you ought to file in 90 days. And if you don't, you may not be able to be an intervener. On the other hand, there are going to be circumstances in the agency where we want some flexibility. And in our expert judgment, even though somebody or some entity hasn't shown, quote, good cause as we would normally require, the commission has determined that it's important to its proceeding that this late-filed party be in the case. That's exactly right. I can understand that. And all I'm getting at is it seems to be clear here. And what's so troubling is that you knew what their views were. You considered them. All right. So the only thing that's at stake here is whether they're going to have the right to appeal. And the commission, when they file timely motions, the commission is routinely granted American Whitewater itself intervention, as this court saw in a prior case from this item in 2025. So the commission has no animus against American Whitewater. I just want to make that crystal clear here. Oh, and I wasn't suggesting that, but I was suggesting that the pattern of cases doesn't give us confidence as to what the commission is doing. Well, I would digitize, Your Honor, because the rule entitles the commission to draw very fine factual distinctions. And when you take a look at the facts of these cases, they fit very comfortably in the cases in Note 36. And they are much different than the other cases. They fit comfortably in the sense that both the mandatory rule and what Petitioner calls the mandatory rule and the discretionary rule both talk about a good cause. And I think it's fair to assume the commission isn't defining good cause differently within those two subsections of the same rule, that you may have good cause or you may not. And here, the commission says, you gave us no reason. You know, and you had legal notice and you had actual notice. And you just said you forgot. And that's not going to happen. All right. End of discussion, says the commission. But on the other hand, in these other cases, even the parties who are more involved in the actual decisions that the commission is going to make, because it'll affect their bottom line, get to come in late. So, it's not a question of bias, but it's a question of how you're applying the rule. And that's what's just odd about it. Well, I think it would go to the weight of the D11 factor in terms of they're trying to explain a degree of delay. And the longer the delay, in terms of the good cause for that delay, the greater explanation you need. And that's an egregious delay here with the minimum of attempt at an explanation. All right. But I would also note, for your honor, even if it's the case that the length of delay articulated as a grounds for decision in paragraph 10 of the recurring order is not, in fact, under properly put under paragraph D1, Romanet 1, as good cause, it would still be a sufficient grounds on its own because Rule 214 does not limit the commission to even those factors. And this case is factually unique, as far as I understand it, because they slept on two different notices or ignored two different notices. Well, it's factually unique in several respects. That's true. Okay. On your favor and on petitioner's favor. So on the mootness issue, so what do we do with the fact that it's not moot now, as we sit here at oral argument, but could become mooted at any moment? Sorry. On the mootness issue, I'm not sure that it isn't moot really right now because there's no, as I understand it, there's no possibility for a viable petition for review of this merits order. Sure, the commission might grant them party status, but I'm not sure what that achieves because the 60-day window has already run. They needed to file a proper hearing request, which the commission rejected. And so they've already missed not only the 825LB 60-day window, they missed the 825LB, I'm sorry, A window as well. And so even if the commission were to grant them party status, the court would have to reject, we may have to reject their notice for hearing yet again. So correct me if I'm wrong. I mean, this is just hypothetical because it's mootness, but is there a possibility of relief? Because it seems to me that if this were remanded to you, you could probably, given this broad discretion that the commission has, come with a better rationale or rationale that fits whatever we say, which is probably what would happen. But is there a possibility that if we had, if we were to remand and say that you didn't apply your intervention rule correctly, reapply it, and if you were to hold, okay, they should have been allowed to intervene, that you would go back and look at what they filed, which you rejected because they weren't a party, because now they are, like I said, at the rehearing stage. My understanding is that the whole process is moot. Right, right. The commission already rejected an earlier attempt at a hearing request because they weren't a party. But I'm not sure how the commission, you know, this is, I can't fully speak for the commission, this is my understanding of the statutory clock. It is a hard jurisdictional limit. It's both 30 days for a hearing request and six days for commission for review. Both of those statutory clocks have run. So even if we were to grant them party status, I'm not sure how that would happen. They were just rejected. Did they file in a timely fashion? But they were just rejected because they weren't a party? I don't know off the top of my head, but I think you could assume so. And if that's true, they could tell you. So if they were timely, I'm just asking, is it just too late? Because the rest of the process is moved on. You can't reopen it for one party then at this stage? Well, I think that... I mean, you could theoretically look at their hearing petition and say we wouldn't have granted this anyway. Right. The commission, like this court, treats the 60-day clock in paragraph B of 825L. The commission treats the, and I believe this court and virtually every other circuit since Boston Gas and the First Circuit in the late 70s, I believe, has treated the 30-day clock in paragraph A as jurisdictional as well and binding both on the commission and the court and not subject to equitable waiver. So I'm not sure what the commission could do there. But again, this problem was avoidable for them in two different ways. One is to read the Federal Register with the 7,000 folks they have able to read it. Yeah, I understand. And the three outside law firms... So you're saying even if it's an equitable matter, even if there were equitable... Right. There would be no equitable reason to do that here. And secondly, they could have solved expedited briefing, for example. I mean, the commission certainly took its time with the merits when we went through a long section 106 process. I'm not at all sure that had they intervened closer in time, but still a little bit late within your little bit late, it's okay rule. And we're talking about three or four months difference in timing. But this case still isn't coming up here. We still have to do the intervention. And I don't see why that would have changed anything on our business issue. I don't understand. It was a commission that took forever to rule on intervention. I think my point might not have been clear. If they had intervened in a timely fashion, the commission might well have... Okay, so this is your... There's some number of lateness that's okay and some number that isn't argument. Well, it wouldn't be latest at all. Right. Okay. You're only making the lateness at all argument. I mean, it is very strange to sort of figure out what happens. If we're right, they haven't made as a matter of law, we had to be granted intervention argument. You're right. They've only said this was applied in arbitrary way. And they asked to have only the intervention decision set back. They don't ask us to say and direct for if it grants intervention, then to reopen the proceedings. Would FERC at this stage, I assume it still has the authority to reopen? Assuming this magic letter doesn't come in from the commissioner of dam safety or... There is a rule on reopening. I have to apologize to your honor. I'm not sure the exact basis of it and how that would... I'm not sure the commission policy on the clock, the statutory clocks vis-a-vis the reopening rule as well. Right. In a worst case scenario, we might need to brief that. I mean, it's early. Okay. All right. Any questions? Thank you very much. Thank you. A little bit over your time. We appreciate you working with us on this. I think also we'll give you three minutes for rebuttal. You haven't asked for to direct them to reopen if they grant intervention. You haven't asked us to rule as a matter of law that they should have granted intervention. So it does feel like a bit of a pickle here on when you would even be intervening in. I understand that concern, your honor, but that concern was addressed by the public service commission case in which they noted... Really old case. And since then, we've gotten arrogance that it's just... A little hard to figure out what to do with these two cases. Narragansett is distinguishable, your honor. That case was decided on standing grounds. And the court specifically noted that standing had to be evaluated at the time the petition for review was filed. And in that case, all of the relief that the petitioner was seeking was eliminated at the time that the petition for review was filed. And that is simply not the case here. And public service commission is the most on-point case because it dealt with a circumstance that is like American Whitewater's posture here. The liability for relief may be eliminated since... Normally what happens is someone else has filed a petition for review too. I mean, FERC, you know, alas, makes hard decisions which it tends to make somebody half unhappy on one side and sometimes everybody unhappy on both sides. But this is just an unusual case where they only... Everyone else was content with the decision. I'm not saying that you shouldn't have your views. As Judge Rogers has said, you had a different viewpoint. But this thing is over and done and they are, you know, have done everything except one plug. And so it seems a lot then to think that... And you haven't asked us to direct reopening in your brief. And I'm not... Are you aware of any case since public service commission where this court has claimed... And that wasn't a hydroelectric case, I don't think. Where this claim has... Was it under the same statute though? I believe so, Your Honor. Any other case where this court has said, go back and if you granted your pension, then you must necessarily reopen. And it's that second part, which is what... I take your point and that's your live interest. We don't assign anything for our authority to direct that. What is our authority to do that? The best authority I have, Your Honor, is the public service commission case. And in that case, the petition... Is this something in a statute? Are there other cases where maybe not an intervention context, but for whatever reason we had to direct them to reopen an otherwise completely finalized decision that no one else is challenging? As FERC council noted, FERC does have the ability to reopen proceedings. And this court... And you test when they do that. What is their test? I don't have the test on the top of my head. If the test was prejudice to other parties, then... In this case, Your Honor, any prejudice that might be considered can only be attributed to FERC's actions if this court agrees with American Whitewater. There has been no evidence of prejudice and disruption at the time American Whitewater filed its motion to intervene. And the court in public service commission, the petitioners did not ask for reopener, but the court in that case noted that if it would be decided on the merits of the intervention request that the federal power commission had aired, then necessarily the proceedings would have to be reopened. I just don't know what the authority for that is. I mean, we've got the case. I guess I could just point to that, but that seems an extraordinary proposition. If Your Honor finds a moodness or any type of these issues to be relevant to this case, FERC Council or American Whitewater Council can submit to the FERC regulation or the part of the statute that pertains to reopener. But both parties here agree that there is a particular authority that allows for FERC to reopen its proceedings. But what can it do upon reopening if statutory deadlines have passed? In this case, Your Honor, the issue of statutory deadlines is solved in part by 16 U.S.C. 825 L.B. And in that part of the statute, it states that even after a petition for review is filed, FERC can modify its order. And the statute does not say- Well, that's not the judge's question, as I understood. So I understood Your Honor's side to be saying that it's too late. There was a 60-day deadline. It's done. And we can't go back to that. So once, I guess there are two barriers. One is once this letter issues, we have no jurisdiction. Even before it issues, a reopening would not enable it to really do anything substantive because the process has moved on. And so at some point, I feel like that probably is the case. I don't know specifically how the FERC rules work, but why is he wrong? He's wrong, Your Honor, because of this court's decision in American Whitewater v. FERC in 2025. And while that case was not an intervention case, the case did decide the issue of mootness after a surrender order becomes effective. And at that time that that issue was decided, the court found that even if the surrender order was effective upon this court's decision, it still would not render the case moot because this court could vacate that surrender order, which would revert jurisdiction back to FERC. You haven't asked us to do that? No, Your Honor. And the issue of whether or not the related proceeding would be moot would have to be resolved in that particular case. But in this case, the best case and the only case that either party has raised on this issue is the Public Service Commission case. See, I'm thinking of some other cases, not FERC cases, where we have said that the petitioner in this type of situation has to show how it was prejudiced. All right? And so the argument FERC makes is, look, not only did you have formal and legal notice, but you're frequently before FERC. So you know how FERC operates, all right? And you're a sophisticated party, all right? Furthermore, we have your views. We've considered them. So, you know, what's the prejudice to you? The people you represent, their views have been presented to the agency and the agency has considered them. The agency hasn't necessarily agreed with those views, but that's not the test. And so why should we sort of come up with some bad law, arguably, undercutting sort of the agency's procedural process when the party before us, quote unquote, hasn't pointed to any prejudice to it? Because the people it represents or the entities it represents, their views have all been presented to the commission and there's no suggestion that American Whitewater has anything more to say. That's not the commission. That's not necessarily true, Your Honor. Well, I didn't see that in your brief. And we get briefed all the time where parties say, look, we're late or we want some special treatment because we've been prejudiced, all right? That's not in your brief. And that's because the issue of the difference between for considering American Whitewater's comments and now happened after briefing in this case. It was after the surrender order was issued. You can file 28 J letters. You can put us on notice. None of that happened, you know? So literally 24 hours before, we've got this new issue before us, all right? So I'm just trying to think, you know? In this case, why are the equities in your favor when you haven't pointed us, you haven't asked for things, all right? As Judge Millett's questions have pointed out. Judge Pan has pointed out how there are all kinds of issues that haven't been answered this morning. And, you know, you're not answering them now. You still haven't pointed to any prejudice to the interests you represent? The specific prejudice is a change in position that FERP took in between the EA and the surrender order. That was not my question, counsel, and you're too bright. Okay. And you knew what my question was. The interests you say have not been adequately represented by any other party before FERP. But you submitted your comments on behalf of the members that you represent, and you're not denying or you're not challenging FERP's statement that it considered those comments. In the request for rehearing of the surrender order, American Whitewater does argue that FERP did not sufficiently consider the arguments. Sufficiently. Okay. They considered them, all right? Maybe not sufficiently from your point of view, but you haven't argued any prejudice here. It's not as though FERP overlooked some major issue, you know, that the dam after five years is going to explode and kill all the residents within 20 miles. That's not this case. I mean, this case is an intellectual case, right? Now, are we going to look at a rulemaking by an agency and say, yeah, they're all over the waterfront. You know, their cases are so different. And FERP comes back and says, yes, and that's exactly what our rule entitles us to do. All right? But for a sophisticated litigant who had legal and had constructive and legal notice, you know, what's the excuse for letting you come in so late in the game? There is none. And you haven't said your prejudice. Your Honor, the specific prejudice is the inability to respond to the environmental justice rationale, which switched. So American Whitewater's interest is advocating for surrender with dam removal. And in the EA, unlike in the surrender order, FERP attested that environmental justice weighed against dam removal. And then it changed its mind in a way that no party has been able to comment on in the surrender order. Well, no other party is before us either, right? That's correct, Your Honor. All right. So apparently everybody's happy. Or they just decided this litigation has to come to an end. It's clear that this dam is going to be decommissioned. All right? It's unclear, Your Honor. I have no way of knowing why the other parties may or may not have. We don't either. But all we have is what's before us. All right? And this rule has been on the books forever. You certainly had an opportunity to petition the agency to change its rules. Never did that. And that's not your argument here today. I'm just trying to think about, you know, from our point of view about why do we bend over backward in this type of case? All right? Because you don't like the way the commission has applied the rule over time. And some of the commissioners don't like it either. But the court has stuck with it. You're right. And the court, and it's stuck with it. And the court candidly has gone along with it. All right? So your burden is really high. And you're saying we have some good arguments, but I don't see the prejudice. And I've made some of the arguments for you in questions today. This court made clear in cases such as City of Oroville and Public Service Commission that would-be interveners are aggrieved by a denial of intervention. And in this case, as I just- Who are you aggrieved? What is the prejudice? The specific prejudice relates to the procedural injuries related to the denial of intervention. And so you've had constructive and actual notice. And that's the risk you took. All right? Why is the problem that the agency has to reopen this whole thing months later? Because, you know, you decided other priorities. That's because the administrative oversight or the consideration of D1I in Rule 214 is not determinative. Because it's not the same thing as D3 good cause. But even if this court doesn't- I didn't see any legal argument that we have to construe the words good cause differently in D3 and D1. Nobody has suggested that. Your Honor, American Whitewater did state that in their briefing. And this court did decide that. The texts are different questions. Yes. They are textually different good cause questions. Yes, Your Honor. And this court decided that they were different types of questions in the Swanson mining case. And the reason for this case, the heart of this case, relates to the arbitrary and capricious nature of FERC's decision-making. But I'm getting at, what do the words good and what does the word cause mean? All right. And we have some understanding of what FERC thinks they mean. And we have some understanding of what at least two commissioners think they should mean. But, you know, the majority of the commission hasn't adopted those dissenting views. And so we have the rule as it is. The commission has not- you're right, Your Honor. The commission has not clearly stated what good cause means. But the two- So then it seems to me a party coming before us would have to argue why those two words should be understood differently in B3 as opposed to D1. And I didn't see any argument there. I saw an argument as to what factors the agency should have considered. But that's a different issue. Your Honor, American Whitewater did brief this issue and discussed how B3, good cause, and D1I ask different questions. D1I asks what prevented the proposed intervener from filing on time? Yeah, I thought that was a very sophisticated argument. All right. You made another very sophisticated argument like that. And that's why it's just amazing to me that American Whitewater waited for nine months. Your Honor, American Whitewater doesn't dispute administrative oversight or the length of delay. But the length of delay, as Judge Millett pointed out, is not a factor in the Rule 214 analysis. FERC has not announced in any of the cases that it cites that a set number of months should relate to D1I. And Judge FERC says, hypothetically, this is the case. You have a sophisticated litigant who's before us all the time. It had constructive notice as a matter of law. And it had actual notice. If there is ever a case where we have proceeded, we should apply the rule here. Nine months under those circumstances just doesn't come within our rule. And there's no explanation as to why you couldn't come in. Earlier, much less on a timely basis. The administrative oversight, Your Honor, is not determinative. FERC has, on many occasions, decided to grant the intervention in cases of administrative oversight, as Judge Millett pointed out. I know. But my point is, why can't the Commission say, we have this rule, everybody's on notice, there's D3 and there's D. And D says may. Okay, we're going to apply D3. FERC could do that, Your Honor, but they have not done so in this case. And in the words of recent FERC Commissioners... Why do you think they haven't done so in this case? Your Honor, it's not clear why FERC decided to decide American Whitewater's motion in the way that it did. Oh, I read why they said they denied it. They said, no explanation, administrative convenience. And we said, that's not enough alone. You're a sophisticated litigant. You had constructive notice. You had actual notice. And a lot of time has passed. And we're going to consider your comments anyway. I apologize, Your Honor, if I misspoke. I was speaking to the hypothetical where FERC did explain how it's not been inconsistent in its past practice. But you're right, FERC did list those explanations. And as to Your Honor's questions about the experienced nature of American Whitewater, FERC has never stated that that's a principle that it's going to apply in the application of Rule 214. Excuse me, go ahead. I mean, if they were adopting a new rule there, then we would expect to see that having been applied since your case, right? I mean, have cases since yours denied intervention because a sophisticated, creative party couldn't show good cause? I'm not aware of a case where there's been a dis- It's been the opposite. Right, PJM. We reject your good cause, but we're going to let you in anyhow. Yes, Your Honor. And in certain instances, like the one- They weren't adopting a new clear rule in your case. No, Your Honor. They have not been clear on why in some cases they allow for administrative oversight decisions to go forward. And in other cases, they do not. And as this court held in Aramark Court versus FAA, where a court is dealing with a different decision-making criteria, and in that instance, they had five different criteria they were applying to exemptions from noise standards, the court still found that they had to apply those five criteria consistently across parties. Do you have more questions? I just wanted to follow up on Judge Rogers' prejudice question. And your prejudice- Normally, what we see is an explanation of prejudice as to, you know, what happened before the agency. And I'm not sure that in Public Service Commission that they- It was a different proceeding, and they were kicked out at an early stage, and the proceeding went on without them. It wasn't like an environmental assessment here where they said, but go ahead and do your comments, and we're going to consider your comments. Is there a case that says the prejudice can be just your ability to seek review in a court, as opposed to prejudice before the agency's process itself? I'm not aware of an analogous case for American Whitewater's posture, Your Honor, but the only cases that either party have cited with respect to standing purposes for a denial of intervention have found that the petitioners have standing in those cases because of the procedural injuries associated with the denial. And where do those procedural- I guess I'm asking where those procedural injuries usually happen. Usually, it's before the agency itself. Collaterally, that limits your ability to come here. But there also is some prejudice before the agency. You know, this is an unusual one because it's an environmental assessment, and not everyone in the world can comment on it. And so you didn't, as Judge Rogers explained. Your comments were taken and were considered. And so I'm trying to understand if there's a case where prejudice was exclusively nothing. You weren't prejudiced before the agency by not being allowed to intervene. Your sole argument of prejudice, as I take it, and correct me if I'm wrong, is that, but now we can't seek judicial review. Am I right in understanding that that is your sole argument as prejudice? That's the correct posture right now, Your Honor. And as I mentioned earlier, there's not a specific case that decides this exact issue that I can point Your Honors to. But the only cases, as I mentioned earlier, that have decided this question have found that the petitioners have standing. And while Public Service Commission- No, I'm talking about- I mean, we have mootness issues here, but also, you know, if you're not- I'm trying to figure out if it would take some sort of expansion of our laws or showing a prejudice to say, or the laws of our case precedent, to say that it's sufficient if your prejudice is- if your intervention did not affect your ability to be- submit comments, have those comments addressed and that's what the agency process was, considered as part of their decision-making process. You're just prejudiced in seeking judicial review. You don't have a case like that. No, Your Honor. The best case I can point you to is the Public Service Commission case, where it- That, but that- was that- that was- was that an environmental assessment case? No, Your Honor. And it's not clear that in the standing case law or the mootness case law for EA versus EIS, it's not clear that the courts or FERC draw that particular distinction. No, but we're talking about the- we do sort of have, as Judge Rogers noted, a requirement of a showing of prejudice from procedural error, alleged procedural error by the agency. That's the body of cases I'm asking about. So the concrete injury that's related to the procedural denial of intervention here is that American Whitewater members would recreate on this portion of the river if the dams were moot. That's your standing- that's your Article III injury. I'm talking about- I'm just not being clear. The prejudice to you from not being allowed to intervene. That's not a standing question. You were able to communicate those recreational interests to the commission. They were- you made your comments. They were considered by the agency. You don't dispute that. So that was not your prejudice before the agency. Tell me how you were prejudiced before the commission by not being allowed to intervene. Your Honor is correct that the specifics of the prejudice relate to the right to judicial review of a flawed surrender order decision. And in this instance, as I mentioned earlier, the fact that FERC changed its mind- I understand you have a petition for review on that issue. Okay. I do. So I'm just trying to understand. I thought you had said that it wasn't just the right to appeal as an intervener, but there was also a substantive issue on rehearing, which perhaps complicates things somewhat because that's the thing that cannot be addressed in light of where the process is at this point. Because it seems to me that if it were just the right to appeal, public service might support that there's no mootness in the remedy as you get to appeal. As there is language in public service that says, if you could be deemed to have been an intervener from the time of its application to intervene, and that under such view, it could be deemed to have been a party in the full sense throughout the proceeding, and thus it could be deemed to have been a party to the proceeding at the time of the final order. And on that conception, your petition to review the final order would be properly heared. I think that chain of reasoning would support a finding potentially. If we rule in your favor, I guess, again, this is hypothetical because you've asked that they have to, that the agency would have to apply the rule and in whatever way we say they're supposed to, they would still have discretion to deny you. But theoretically, if you were supposed to be in, then I guess that would just mean you could appeal based on this reasoning. And it wouldn't necessarily have to get back into the sticky getting back before the rehearing and the arguments and et cetera, and the deadlines. Anyway, so it just struck me that there is a pathway to not being, if the only thing before us was whether or not you can appeal or not. MARY JO GIOVACCHINI. That's correct, Your Honor. The Public Service Commission case does support the ability for this case to go forward and for the petition for review in the related case.  But you said there's something in addition to just the appellate rights. MARY JO GIOVACCHINI. What I was, what I believe, Your Reference and Your Honor, is the statement that I made to Judge Millett about American Whitewater's members being able to recreate on this portion of the river.  In response to a question I asked you when you were first before us, I said, is the only thing before us your right to appeal? As an interviewee, you said no, because there were comments you made on rehearing that weren't considered because you weren't a party. MARY JO GIOVACCHINI. Adequately considered. MARY JO GIOVACCHINI. Yes.  Sufficiently considered.  That issue, Your Honor, is wrapped up in the issue of appeal, because whether or not FERC adequately addressed the environmental justice rationale switch-up was something that was made in the request for rehearing as part of that appeal process because it's an under-order decision. MARY JO GIOVACCHINI. I'm just figuring if that's not available. And then my other question was just, and there have been some talks about the equities here, and I am wondering why you didn't move to expedite this appeal, because I think we're in a little bit of a pickle because of the timing. And it seems that if that was your fault, and as Judge Rogers said, you're asking us to bend over backwards to figure this all out for your benefit, and I just don't know why we should have to do that when you didn't, throughout this, I guess, throughout this case, you've not taken a bunch of procedural steps that you should have. And you're leaving it to us to kind of figure this all out for you. MARY JO GIOVACCHINI. Your Honor, at the time that we were briefing this issue, we believed that the mootness issue was not going to be relevant because of this court's precedent in American Whitewater v. FERC and the Public Service Commission case. So, at the time, we didn't believe that an expedition was, like, necessary because of those particular proceedings. But you didn't know. MARY JO GIOVACCHINI. Well, American Whitewater wasn't an intervention.  Yes, right. No.  That's correct, Your Honor. But in terms of how the related case and the mootness issues there of if American Whitewater can properly seek judicial review in that case relates to American Whitewater v. FERC, that is how that issue is relevant.  There would be a point at which they can't reopen the order anymore. There must be some timing problem moving there. MARY JO GIOVACCHINI. Your Honor, it's not clear if there is.  There's jurisdiction.  But this court in American Whitewater v. FERC found in a situation that if FERC happens to lose jurisdiction after a petition for review is filed, that doesn't moot the case because this court can vacate the surrender order and then try-  Because a party had moved. We're back at the beginning. Are you a party?  Not yet.  That's correct, Your Honor. And that's where the Public Service Commission case comes into being.  So, you keep going back to that. And also, you didn't ask for any vacater of anything. I know there was no order at that point, but it was foreseeable it was going to happen. And all you asked for was a remand to reconsider your intervention motion. So, again, we're just trying to figure out what to do about this, and you didn't lay it out.  It's my understanding, Your Honor, that 16 U.S.C. 825 L.B. would prevent American Whitewater from seeking vacature of the surrender order in this proceeding because that's not something that was raised-  But not seeking- But at least saying that there was a path. I think it was just foreseeable that the surrender order would happen. There would be at least a mootness question to us, even if it wasn't clear to you. And if you have all these ideas about why we shouldn't be concerned about that, it would have been incumbent on you to let us know or somehow put it in your briefs, because now we're in a little bit of a bind. And I'm not- You know, we don't love to ask for supplemental briefing. Slows things down, et cetera. Complicates things. But I'm not sure what to do about where we are. And it seems a lot of it is your fault, I guess, is probably a better way to put it. Well, Your Honor, the burden to prove that a case is moot or the burden to prove that vacature is not necessary lies with the defendant or the respondent in this case. And FERC did not, at any point in time after the opening brief was filed, state that this case should be considered- You were denied the final FERC decision denying intervention was 11 months before the surrender decision, right? January to December, is that right? I believe so, Your Honor. Okay. You never at any point asked for a stay proceedings. Your reply brief notes that the surrender decision has been made. You didn't ask FERC for a stay. No, Your Honor. Unless Friday, probably as preparation for oral argument, you filed your administrative stay request, which you did that was months after their surrender decision. And so you were filing petitions for review, but never asked for stays, never asked for expedition. Had you moved promptly to ask FERC to stay this decision after it issued the surrender decision in December, then all of this could be things potentially at least an easier not to untie than it now is. And you didn't, in your reply brief, address mootness at all. You didn't cite public service commission there and say, they surrendered it, but it doesn't- You say, well, and we're going to file a petition for review. And you did it on the next to last possible day. You weren't asking expeditiously. Well, Your Honor, the mootness issue, as I stated previously in my answer to Judge Pan, it's the defendant's burden to raise these issues and to prove that mootness or that bigotry is unnecessary. You're the one seeking action from this court. And the only thing your reply brief asks for, knowing that the surrender decision has now been made, again, is a remand of the intervention decision. And you don't anywhere argue the impact of the surrender decision on whether there's even a proceeding we could order them to let you intervene in. Your Honor, not to sound like a broken record, but the public service commission case- I was wondering why you didn't do any of these other things. I mean, it's not uncommon when these things happen to say, hang on, stay that decision. We've got a serious intervention problem here. And rather than have everything go forward, let's put the brakes on this, sort out intervention. And then we can figure out what to do with the surrender order. But instead, time limits ran for everybody to petition. You know, you do a reopening, I don't want to have to let everybody back in in case the case clerk were to say, yes, you should intervene. Yes, we're reopening. Yes, you're right. Does everyone else have to come back into that reopening proceeding? And they thought they were done. Your Honor, to answer the earlier part of your question first, it was unclear before briefing was issued in this case, whether or not when the surrender order would be issued. It's my understanding- It's not unclear when you reply briefed. That's correct, Your Honor. And that's because the surrender order was issued the day before the reply brief was due. Yeah. You can ask for an extension motion to address it. You can ask for supplemental briefing. I understand, Your Honor. But it was not clear when FERC would issue the surrender order because it's my understanding- Why didn't you reply brief where it had been issued at that point? And I get it was last minute. And lawyers will say, hang on, we need another week on our reply brief. It's not an expedited case because this important event has just happened. Your Honor, the reason for that is because it's the respondent's burden to raise these issues and to prove that mootness and vacatur are actually- You want relief. You've got to keep the case alive while it's in this court. I don't think you can fluff all this off on the commission. The commission's brief was filed before the surrender decision. They had nothing to address in their brief on this issue. I understand, Your Honor. But the mere fact that American Whitewater didn't move to expedite briefing does not mean- For six days or address the consequences of the issued surrender order in the reply brief or ask for supplemental briefing there so they would just respond off the implications of the surrender order. That's correct, Your Honor, in part because, as I stated earlier, this court's precedent in American Whitewater versus FERC and the Public Service Commission made clear that FERC cannot moot the intervention denial petition for review in this case. So American Whitewater was under the impression that this court's precedent was clear and so that particular issue, unless raised by the defendant, did not need to be further clarified. Isn't a 28-J letter on Public Service Commission? No, that opinion is cited in our brief, Your Honor, for different propositions, including for the standing issue. Okay. Any other questions? No. All right. Thanks to everyone. Thank you for a very long time on the complexities of this case. It is now submitted.
judges: Millett; Pan; Rogers